[Cite as *In re Pratt*, 2023-Ohio-3487.]

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| IN RE: RICHARD S. PRATT | Case No. 2023-00203VI |
| ROSEMARY PRATT<br>NANCY MILOTA | Judge Lisa L. Sadler |
| Applicants | <u>ORDER</u> |

{¶1} Richard S. Pratt, Jr. (Pratt) died of a drug overdose on May 23, 2020 from methamphetamine that was laced with fentanyl. Rosemary Pratt and Nancy Milota (Applicants) filed a crime victims compensation application asserting that Pratt was a victim of involuntary manslaughter, which was committed by the drug dealer when he sold methamphetamine laced with fentanyl to Pratt. On January 3, 2023, the Attorney General rendered a Final Decision denying Applicants' claim because voluntary ingestion of a lethal dose of drugs does not constitute criminally injurious conduct. Applicants filed an appeal with this Court on February 14, 2023.

{¶2} A hearing was held before a magistrate on June 1, 2023. The Magistrate issued her Decision on June 28, 2023, in which she recommended that the Final Decision of the Attorney General be affirmed. Applicants filed an Objection to the Magistrate's Decision, which is now before the Court for consideration.

### Standard of Review

{¶3} "A party may file written objections to a magistrate's decision within fourteen days of the filing of the decision * * *." Civ.R. 53(D)(3)(b)(i). Objections "shall be specific and state with particularity all grounds for objection." Civ.R. 53(D)(3)(b)(ii).

{¶4} The court "shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). In reviewing the objections, the court does not act as an appellate court but rather conducts "a de novo review of the facts and conclusions in the magistrate's decision." *Ramsey v. Ramsey*, 10th Dist. Franklin No.

13AP-840, 2014-Ohio-1921, ¶ 16-17. "Whether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, with or without modification." Civ.R. 53(D)(4)(b).

**Factual Background and Procedural History**

{¶5} On May 23, 2020, Pratt was found dead in his apartment. The officers who responded to the call found some drug paraphernalia, a white powder, and a pink powder. The medical examiner concluded that Pratt's death was accidental and caused by combined ethanol, fentanyl, and methamphetamine intoxication. (Record, p. 76.)

{¶6} A hearing was held before a magistrate on June 1, 2023. Applicant Rosemary Pratt, Pratt's mother, testified to the following: Pratt did not voluntarily ingest a lethal dose of fentanyl. Instead, he was a victim of a repeat drug dealer who sold him increasingly strong doses of drugs. The drug dealer sought to increase his personal profit by lacing his drugs with fentanyl. According to Rosemary, the fact that Pratt died with so little fentanyl in his system suggests that he had not previously used fentanyl, i.e., he had not developed a tolerance for it. The police recovered several messages from Pratt's phone discussing the purchase of drugs, none of which mention fentanyl. (Applicants' Exh. 3; Record, p. 60-74.) Applicant Nancy Milota, Pratt's grandmother, did not testify.

{¶7} On May 17, 2023, after the compensation application was filed, Gregory Miller, Jr. (Miller) pleaded "guilty to involuntary manslaughter R.C. 2903.04 a [felony of the first degree] as charged in count 1 of the Indictment." (Capitalization deleted.) (Applicants' Exh. 1.) Count 1 of the Indictment charges that Miller and Samantha Liebhart "did cause the death of Richard Pratt Jr. and such death was the proximate result of Gregory Miller and/or Samantha Liebhart committing or attempting to commit the felony offense of Corrupting Another with Drugs, Revised Code Section 2925.02." (Applicants' Exh. 2.)

{¶8} In her June 28, 2023 Decision, the Magistrate recommended that the Attorney General's denial of the Applicants' crime victims compensation application be upheld because the voluntary ingestion of drugs does not constitute criminally injurious conduct. Applicants filed an Objection to the Magistrate's Decision on July 10, 2023. Applicants' Objection does not contain a certificate of service in accordance with Civ.R. 5(B)(4). However, there is a notation at the bottom indicating that copies were sent to the

Attorney General and Assistant Attorney General Melissa Montgomery. The Court concludes that Applicants have substantially complied with the service requirement. The Attorney General did not file a response.

**Applicants' Objection**

{¶9} Applicants argue that criminally injurious conduct is defined as "any conduct that occurs or is attempted in the state; poses a substantial threat or (sic) personal injury or **death**; and is punishable by fine, **imprisonment**, or death or would be punishable but for the fact that the person engaging in the conduct lacked capacity to commit the crime under the laws of this state." (Emphasis sic.) (Objection, p. 1.) And on June 28, 2023, Gregory Miller—the drug dealer—was sentenced to prison for seven years for the involuntary manslaughter of Richard Pratt, Jr. Therefore, Applicants assert, Pratt was a victim of criminally injurious conduct.

{¶10} The Court understands Applicants' logic and sympathizes with their loss. However, although Miller was convicted of a crime related to Pratt's death, not every crime amounts to criminally injurious conduct for purposes of the Victim's of Crime Compensation Act. Even though they use much of the same language—such as "victim"—the criminal law and the law governing crime victims compensation are different statutory schemes. It is thus possible for Pratt to be a victim of crime for purposes of criminal law but not a victim of criminally injurious conduct for purposes of determining whether Applicants are entitled to crime victim compensation.

{¶11} R.C. 2743.51(C)(1) defines criminally injurious conduct, in pertinent part, as "any conduct that occurs or is attempted in this state; poses a substantial threat of personal injury or death; and is punishable by fine, imprisonment, or death, or would be so punishable but for the fact that the person engaging in this conduct lacked capacity to commit the crime under the laws of this state." This Court has consistently held that, in the absence of foul play, a decedent's voluntary ingestion of a drug is not criminally injurious conduct, even if it results in their death. *In re Stanley*, Ct. of Cl. No.

V2007-90340tc, 2007-Ohio-4700, aff'd jud (Dec. 12, 2007)[1]; *In re Camp*, Ct. of C. No. 2018-01054VI, 2018-Ohio-5481, aff'd jud (Dec. 7, 2018).

{¶12} In this case, Miller's only conduct towards Pratt was selling him the drugs. The drug deal itself did not pose a substantial threat of personal injury or death; Pratt was not harmed during the drug deal. Instead, Pratt died when he consumed the drugs, presumably outside of Miller's presence. The medical examiner's report indicates that Pratt took the drugs in his own home and died from an accidental overdose of ethanol, fentanyl, and methamphetamine. No evidence was presented to show that Pratt did not take the drugs voluntarily. Accordingly, the Court finds that Pratt took the drugs voluntarily.

{¶13} The next question is whether there was foul play involved. In *Howard*, the offender encouraged his minor victim to drink excessively so that he could then sexually assault him. *In re Howard*, Ct. of Cl. No. 2019-00676VI (Sept. 1, 2021) aff'd jud (Oct. 13, 2021). The victim died from alcohol poisoning before the offender could sexually assault him, and the offender was convicted of involuntary manslaughter. This Court concluded that the minor was a victim of criminally injurious conduct because there was both a conviction and foul play. The foul play was that the offender encouraged the minor "by trick or coercion to drink to excess so he could sexually abuse them." *Id.* at 7.

{¶14} In this case, however, there is no evidence that someone coerced or tricked Pratt into consuming the drugs that he purchased. Applicants argued during the hearing that Pratt did not know that the drug dealer had laced the methamphetamine with fentanyl, although they did not prove Pratt's lack of knowledge by a preponderance of the evidence. Nevertheless, even if it is true that he thought he was only purchasing and consuming methamphetamine, because methamphetamine is an illegal drug, there is no guarantee as to its quality or purity. Illegal drug users assume a risk every time they take illegal

---

[1] Although the Attorney General asserted during the hearing and the Magistrate's Decision seems to indicate that *Stanley* involved a conviction related to the death of the victim, the Court notes that it appears that the panel of commissioners in *Stanley* were not presented with evidence of a conviction: "In this case, even though various charges were filed against Julie Miller in connection with the decedent's death, * * *." *Stanley* at ¶ 5.

drugs that the drugs may not be what they intended to purchase and that they could be harmed by ingesting such substances.  Therefore, there was no foul play.

{¶15}  Because there was no foul play and Pratt consumed the drugs voluntarily, his death was not the result of criminally injurious conduct.  *Stanley*, 2007-Ohio-4700; *Camp*, 2018-Ohio-5481.  Therefore, Applicants are not eligible for an award of compensation.  Accordingly, Applicants' Objection shall be overruled.

**Conclusion**

{¶16}  For the reasons stated above, the Court concludes that the Magistrate properly determined the factual issues and appropriately applied the law.  Therefore, the Court adopts the Magistrate's Decision and recommendation as its own.

{¶17}  IT IS HEREBY ORDERED THAT

{¶18}  The June 28, 2023 Decision of the Magistrate is ADOPTED;

{¶19}  This claim is DENIED and judgment entered for state of Ohio;

{¶20}  Costs assumed by the reparations fund.

<br>

LISA L. SADLER
Judge

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to:

Filed 09/07/2023
Sent to S.C. Reporter 9/20/23